UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AQUIDNECK TRUCKING, LLC, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LIGHTSPEED TRUCKING, LLC, et al., )<br>)<br>Defendants. )<br>) | Civil Action No.<br>24-12767-BEM |

**MEMORANDUM AND ORDER ON
DEFENDANT BEACON BUSINESS BROKERAGE, LLC'S MOTION TO DISMISS**

**MURPHY, J.**

This action arises out of the brokerage and sale of an allegedly fraudulent trucking business to Plaintiff Aquidneck Trucking, LLC ("Aquidneck"). *See generally* Dkt. 66 (First Amended Complaint, or "Compl."). Defendant Beacon Business Brokerage, LLC ("Beacon"), which brokered the sale, has moved to dismiss all claims against it for lack of personal jurisdiction. Dkt. 79. For the reasons stated herein, the Court will deny Beacon's motion.

**I.    Background**

The following facts are drawn from the parties' submissions. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121–23 (1st Cir. 2022).

**A.    Lightspeed Purchase**

Beacon is a Texas-based company that advertises and brokers sales of private businesses. Compl. ¶¶ 3, 48. On or about October 4, 2023, Defendant Lightspeed Trucking, LLC, a Colorado-based company ("Lightspeed") engaged Beacon to broker its sale. Dkt. 82 ¶¶ 6–11. Following engagement, Beacon prepared a Confidential Information Memorandum to be provided

to prospective Lightspeed buyers and posted advertisements for Lightspeed's sale on third-party websites. *Id.* ¶¶ 12–13.

On or about August 11, 2023, Plaintiff Lori Kinney initiated contact with Beacon in response to an advertisement for the sale of a different business, a property management company based in Massachusetts. *Id.* ¶¶ 20–21; *see also id.* at 31–32, 34. Kinney thereafter requested information about several other Beacon listings before, on October 31, 2023, inquiring about Lightspeed, prompting Beacon to grant Kinney access to Lightspeed's Confidential Information Memorandum. *Id.* at 34–36. On or about November 1, 2023, Kinney submitted an offer on Aquidneck's behalf for the purchase of Lightspeed, and Beacon generated a Letter of Intent reflecting that offer.[1] *Id.* at 36, 38–44; *see also* Dkt. 89-2 at 1.

Thereafter, Beacon frequently communicated with Plaintiffs regarding the Lightspeed sale, by email, telephone, and teleconference. *See* Dkt. 89 ¶¶ 14–15 (Kinney affidavit, describing "many" phone calls with Beacon); *see also, e.g.*, Dkt. 89-3 at 60–66 (Nov. 2, 2023 Google Calendar invite and related emails: "Buying with Beacon . . . A 15m meeting for prospective buyers of small businesses"); *id.* at 54–57 (Nov. 6, 2023 email chain, initiated by Beacon, introducing Beacon's "Closing Manager," assigned to the transaction, scheduling a call to "discuss the next steps," and asking Aquidneck to sign a disclosure agreement with Beacon's Colorado-based co-broker); Dkt. 89-4 (broker disclosure agreement); Dkt. 89-3 at 58 (Nov. 6, 2023 Zoom invite, from Beacon, "Light Speed Trucking – Closing Kick-Off Call"); *id.* at 36–42 (Nov. 13–21, 2023 email chain, initiated by Beacon, coordinating diligence documents' hand-off from Lightspeed, seeking updates on Aquidneck's financing); *id.* at 28–30

---

[1] The Letter of Intent names "Aquidneck Group Realty LLC" as the purchasing entity. Dkt. 80 at 41. The Asset Purchase Agreement names "Aquidneck Trucking LLC," *i.e.*, Aquidneck. Dkt. 89-8. The Court assumes functional identity between the two and that Kinney is a principal of both.

(Dec. 2–8, 2023 email chain, initiated by Beacon, seeking updates on Aquidneck's financing); *id.* at 19–20 (Dec. 21, 2023 – Jan. 18, 2023 email chain, initiated by Beacon, performing "weekly" "check in" on deal status); *id.* at 18 (Jan. 31, 2024 email from Beacon, sharing template financial documents for Aquidneck's and Lightspeed's use in the transaction); *see also* Dkt. 89-8 at 15–22 (appearing to use a version of those Beacon template documents for the transaction); Dkt. 89-3 at 4–7 (Mar. 19–20, 2023 email chain, coordinating Lightspeed closing documents). Kinney states that she received these communications in Massachusetts, where Aquidneck is principally located. Dkt. 89 ¶¶ 3–5.

The Lightspeed purchase was ultimately consummated in an Asset Purchase Agreement, dated March 28, 2024, and expressly governed under Massachusetts law. Dkt. 89-8 at 12–13.

### B. Overall Controversy

Plaintiffs allege that, within days of closing, they discovered that Lightspeed had given false and fabricated profit and loss statements, contracts, truck titles, tax returns, and other documents to sell assets that did not exist. Compl. ¶ 84. In substantial part, this lawsuit seeks to undo or remedy Plaintiffs' alleged damages from that allegedly fraudulent sale. *See, e.g.*, *id.* ¶¶ 135–45, 188–93 (seeking rescission or annulment of the various sale agreements and instruments). Against Beacon, Plaintiffs allege that Beacon failed to properly investigate Lightspeed before brokering its sale, making various claims under state law. *See id.* ¶¶ 72–78, 161–219.

### C. Instant Motions

On March 7, 2025, Beacon moved to dismiss for lack of personal jurisdiction. Dkt. 79; *see also* Dkt. 81 ("Memo."). Plaintiffs opposed Beacon's motion, Dkt. 88 ("Opp."), and, in the

alternative, sought leave to conduct jurisdictional discovery, Dkt. 87.  Beacon opposed such discovery.  Dkt. 109 ("Reply").[2]

## II.     Legal Standard

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).  "That approach asks only whether the plaintiff has proffered facts that, if credited, would support all facts essential to personal jurisdiction." *Motus*, 23 F.4th at 121 (internal quotes and parentheses omitted).  To meet its burden, "the plaintiff may plead sufficient jurisdictional facts in its complaint, may rely on jurisdictional facts documented in supplemental filings (such as affidavits) contained in the record, and/or may point to undisputed facts." *Id.* at 123 (internal quotes and parentheses omitted).  At the motion to dismiss stage, the Court must "draw all reasonable inferences from [the alleged jurisdictional facts] in [the non-moving party's] favor." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

Where, as here, subject matter jurisdiction is premised on diversity of citizenship, "a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014).  "The reach of Massachusetts' long-arm statute . . . is not coextensive with what due process allows under the federal Constitution." *NRO Bos., LLC v. Yellowstone Cap. LLC*, 2020 WL 5774947, at *5 (D. Mass. Sept. 28, 2020) (citing *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 n.9 (2017)).  Accordingly, "[e]ven where a party presents 'jurisdictional facts

---

[2] Beacon's submission both opposes the motion for jurisdictional discovery and replies to Plaintiffs' opposition to the motion to dismiss.  *See generally* Dkt. 109.  The Court notes that such reply without leave was in violation of Local Rule 7.1(b)(3).

4

sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites' of the long-arm statute." *Sheldon v. DT Swiss AG*, 2023 WL 6201560, at *4 (D. Mass. Sept. 22, 2023) (quoting *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979)).

### A. Massachusetts Long-Arm Statute

The Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3 ("223A, § 3"), "sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant." *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). "A plaintiff has the burden of establishing facts to show that the ground relied on under § 3 is present." *Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 317 (2018) (quoting *Tatro*, 416 Mass. at 767).

Plaintiffs invoke subsections (a)–(d) of the long-arm statute. Opp. at 5. Those subsections provide that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> > (a) transacting any business in this commonwealth;
> >
> > (b) contracting to supply services or things in this commonwealth;
> >
> > (c) causing tortious injury by an act or omission in this commonwealth;
> >
> > (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth[.]

223A, § 3(a)–(d).

### B. Due Process Clause

The Fourteenth Amendment requires that a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotes omitted). Moreover, a defendant must be found to have

5

"purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Finally, the exercise of jurisdiction must be "reasonable." *Id.* at 357 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These limitations reflect "two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Id.* at 360 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). "The plaintiff must demonstrate that each of these three requirements is satisfied." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008).

The relatedness inquiry probes the connection between a defendant's contacts with the forum and the plaintiff's claims. Relatedness is satisfied where a defendant's in-state contacts are "sufficiently related" to the claims, such to "justify subjecting a defendant to personal jurisdiction there." *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2024 WL 3696388, at *11 (D. Mass. Aug. 7, 2024) (citing *Ford Motor*, 592 U.S. at 362). Notably, the Fourteenth Amendment does not require a "strict causal relationship between the defendant's in-state activity and the litigation." *Ford Motor*, 592 U.S. at 362.

The purposeful availment inquiry considers the intentionality of those forum contacts, "ask[ing] whether a defendant has deliberately targeted its behavior toward the society or economy of a particular forum such that the forum should have the power to subject the defendant to judgment regarding that behavior." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 36 (1st Cir. 2016) (internal quotes, citations, and parentheses omitted). This requirement guards against courts' asserting jurisdiction based on "random, isolated or fortuitous contacts" or "the unilateral activity of another party." *Id.*

"To evaluate the reasonableness requirement, the Supreme Court has provided a set of 'gestalt factors' to consider." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 10 (1st Cir.

6

2009) (quoting *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 26 (1st Cir. 2005)). "These factors include: the defendant's burden of appearing, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

### III. Discussion

The Court finds that Plaintiffs have met their burden in establishing the Court's personal jurisdiction over Beacon under the Massachusetts long-arm statute, 223A, § 3(a), and under the Due Process Clause of the Fourteenth Amendment.

#### A. Massachusetts Long-Arm Statute

Chapter 223A, § 3(a) of the Massachusetts long-arm statute is satisfied where the cause of action arises from a person's "transacting any business" in the Commonwealth. 223A, § 3(a). Thus, the two requirements are that a defendant transacted business in Massachusetts and that such business is causally related to the complained-of legal injury. *Tatro*, 416 Mass. at 771 (applying a "but for" causation test).

Beacon "transact[ed] [] business" in the Commonwealth by its frequent communications with Plaintiffs, who were in Massachusetts, to bring about the Lightspeed sale. *See* 223A, § 3(a). "The 'transacting any business' language of [223A, § 3(a)] is interpreted very broadly. A defendant need not be physically present in a state to 'transact business' in that state. In some circumstances, relatively scant or isolated communication into Massachusetts may be enough to establish compliance with the long-arm statute." *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 275 & n.3 (D. Mass. 2008) (internal citation omitted) (citing cases). Here, the parties' communications were not only frequent but "instrumental to [the Asset Purchase

7

Agreement's] formation," *id*.  *See, e.g.*, Dkt. 89-3 at 18 (providing a template for part of the agreement).[3]

Further, the nexus between these contacts, instrumental to the Lightspeed sale, and Plaintiffs' alleged harms, stemming from that sale, is clear. *Cf. Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 112 (D. Mass. 2003). Accordingly, Plaintiffs satisfy 223A, § 3(a) and, so, the long-arm statute.[4]

### B.   Due Process Clause

Beacon offers only a few sentences of summary argument with respect to the Due Process Clause. Memo. at 12.[5] Plaintiffs make a fair point that such argument might therefore be waived. Opp. at 11. Nevertheless, the Court proceeds to analyze the three prongs and finds that Plaintiffs have met their burden under the Fourteenth Amendment.

#### 1.   Relatedness

Consistent with the long-arm analysis above, the Court finds that Beacon's communications with Plaintiffs into Massachusetts reflect meaningful forum contacts that directly relate to Aquidneck's alleged injury. *See Lawrence v. Next Ins., Inc.*, — F. Supp. 3d —, 2025 WL 815066, at *7 (D. Mass. Mar. 13, 2025) ("[C]ommunications directed into Massachusetts may be considered contacts in the forum for relatedness purposes."); *see also Sawtelle v. Farrell*, 70 F.3d

---

[3] Beacon attempts to distinguish its case by pointing to the fact that Beacon was not technically party to the Asset Purchase Agreement. Reply ¶ 3. This is a distinction without a difference. At all relevant times, Beacon acted as broker and agent for Lightspeed, a contracting party. Dkt. 82 ¶¶ 6–11; *id.* at 8–12, 27–29, 46–47 (identifying co-broker as "seller's agent"). Beacon's compensation hinged on the sale's execution. *Id.* ¶ 6. Beacon's role as Lightspeed's go-between does not insulate it from personal jurisdiction based on its own contacts. *See, e.g.*, *Interface Group-Massachusetts, LLC v. Rosen*, 256 F. Supp. 2d 103, 105 (D. Mass. 2003) (contacts made in agent capacity can satisfy personal jurisdiction requirements).

[4] Accordingly, the Court need not reach argument as to any of the other long-arm subsections.

[5] Beacon expounds somewhat in its improperly submitted reply. *See* Reply ¶¶ 8–10; Local Rule 7.1(b)(3).

1381, 1389–90 (1st Cir. 1995) ("The transmission of information into New Hampshire by way of telephone or mail is unquestionably a contact for purposes of our analysis.").

### 2. Purposeful Availment

Likewise, the Court finds that Beacon's contacts reflect purposeful availment of the privilege of conducting business in the Commonwealth. This includes Beacon's months-long, voluntary correspondence with Aquidneck, a Massachusetts company, resulting in the sale of Lightspeed via a Massachusetts contract. *See* Dkt. 89-8 at 12; *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 61 & n.11 (1st Cir. 2002) (telephone and fax communications with Massachusetts resident considered as part of purposeful availment analysis).

More directly, Plaintiffs meet their burden by showing that Beacon targets the Massachusetts economy through its online advertising, including in this very case. Where a defendant's contacts with the forum flow from its generally accessible online content, courts assess the requisite intentionality by looking for "evidence of specific targeting of forum residents [or] evidence that the website has generated 'substantial revenue from forum residents.'" *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 125 (1st Cir. 2022) (quoting *Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020)). Here, that Beacon targets Massachusetts residents is clear just from looking at the admitted facts of this case—the parties first connected because Beacon was advertising the sale of a Massachusetts-based property management company. Dkt. 82 ¶¶ 20–21; *see also id.* at 31–32, 34. It is easy to infer that such content is "more likely to solicit or serve customers in Massachusetts than anywhere else." *Motus*, 23 F.4th at 123. Indeed, on Beacon's own website, one can search its business listings by state. *See* Dkt. 89-1 ("viabeacon.com/***listings?state=MA***" (emphasis added)). It would thus be difficult for Beacon to argue that location is irrelevant to the solicitation of a potential buyer, and reasonable to foresee

9

that the advertisement of a business in Massachusetts would attract Massachusetts residents, implicating the jurisdiction of Massachusetts courts.

Beacon's website provides further and more general evidence of Beacon's deliberately targeting the forum. *See id.* (showing two other Massachusetts businesses currently being brokered by Beacon: a general contractor; and an HVAC/plumbing business, "Under Contract"). Beacon demurs that these examples "have not yet resulted in a sale, and have generated no brokerage fees or other revenue to Beacon." Dkt. 110 ¶ 11. That may be true, if only as a matter of convenient timing—Beacon receives its fee "upon the consummation of a sale of a business facilitated by Beacon," Dkt. 80 ¶ 6, and a sale "under contract" is necessarily unconsummated. As such, one might be reasonable to assume that brokerage fees are still yet forthcoming. In any event, the advertisement of these Massachusetts businesses—particularly ones so locally rooted as a property manager, a contractor, and a plumber—can certainly be said to deliberately target the Massachusetts economy and its residents. *See Baskin-Robbins*, 825 F.3d at 36.

### 3. **Reasonability**

Beacon makes no specific argument regarding reasonability, other than to say that "there is simply no authority for the proposition that a foreign business broker submits itself to jurisdiction in any state in which a potential buyer responds to a solicitation on a third-party website." Reply ¶ 10; *see also* Memo. at 12. This, of course, greatly downplays the facts. Beacon advertises the sale of Massachusetts businesses and so targets Massachusetts residents; one of which here predictably responded, leading to a substantial, months-long interaction and, according to Plaintiffs, injury. Beacon provides no suggestion that appearance would be more burdensome than for any other out-of-state defendant; Massachusetts certainly has an interest in adjudicating the circumstances surrounding the sale of a business to a Massachusetts resident, executed under Massachusetts law, that is the product of business transacted in the Commonwealth; and this Court

is already engaged with the facts of the case, making inefficient a duplicative lawsuit elsewhere. *Cf. Astro-Med*, 591 F.3d at 10. Accordingly, the Court finds the exercise of jurisdiction here reasonable.

## IV.   Conclusion

For the reasons stated herein, Beacon's motion to dismiss, Dkt. 79, is DENIED.[6]

**So Ordered.**

Dated:  July 2, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

---

[6] Plaintiffs' motion for jurisdictional discovery, Dkt. 87, is therefore also DENIED as moot.