UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AQUIDNECK TRUCKING, LLC, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LIGHTSPEED TRUCKING, LLC, et al., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. <br> 24-12767-BEM |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS OF
DEFENDANTS RELIANT BUSINESS VALUATION, LLC AND TODD KUTCHER**

**MURPHY, J.**

Plaintiffs Aquidneck Trucking LLC and Lori Kinney Sullivan purchased a company with allegedly fake assets. Aquidneck has sued numerous parties involved in the transaction including, as relevant here, the allegedly fraudulent business's appraisers. *See generally* Dkt. 66 (First Amended Complaint, or "Compl."). Before the Court is a motion to dismiss all claims against Defendants Reliant Business Valuation, LLC ("Reliant") and Todd Kutcher (collectively, the "Reliant Defendants"). Dkt. 76. For the reasons stated herein, the Court will grant the motion in part and deny the motion in part.

**I.   Background**

   **A.   Factual Background**

The Court draws the following facts from the Complaint and accepts them as true for purposes of the instant motion.

In November 2023, Plaintiffs executed a Letter of Intent to purchase assets owned by Lightspeed Trucking, LLC ("Lightspeed"). Compl. ¶ 52. Thereafter, Plaintiffs connected with a

lender, Acclivity Financial, LLC ("Acclivity"), to underwrite the transaction. *Id.* ¶ 57. Acclivity, in turn, engaged Reliant to perform a business valuation of Lightspeed. *Id.* ¶¶ 75, 154. Kutcher, one of Reliant's employees, prepared the report. *See id.* ¶ 75; *see also* Dkt. 78 ¶ 4.

Aquidneck completed its purchase of the Lightspeed assets in March 2024. Compl. ¶ 24. Plaintiffs allege that, within days of closing, they discovered that Lightspeed and its associates "had orchestrated and perpetrated a fraud upon the Plaintiffs by knowingly and intentionally proffering false and fabricated profit and loss statements, contracts, truck titles, tax returns and other documents to Aquidneck to sell the assets of Lightspeed which did not exist." *Id.* ¶ 84.

Plaintiffs partially blame the Reliant Defendants for this result. Plaintiffs allege that Reliant and Kutcher failed to exercise due care and observe proper industry standards in valuing the Lightspeed assets, particularly by failing to verify Lightspeed's financial information. *Id.* ¶¶ 76–78.

### B. Procedural Background

Plaintiffs' First Amended Complaint names 20 defendants, asserting a total of 21 counts among them. *See generally id.* ¶¶ 112–224. Against the Reliant Defendants, Plaintiffs assert claims for breach of contract, *id.* ¶¶ 147–55 (Count VII); breach of the implied covenant of good faith and fair dealing, *id.* ¶¶ 156–60 (Count VIII); negligent misrepresentation, *id.* ¶¶ 161–64 (Count IX); breach of fiduciary duty, *id.* ¶¶ 165–72 (Count X); negligence, *id.* ¶¶ 172–77 (Count XI);[1] declaratory judgment, *id.* ¶¶ 184–87 (Count XIII); equitable relief, *id.* ¶¶ 188–93 (Count XIV); injunctive relief, *id.* ¶¶ 194–99 (Count XV); money had and received, *id.* ¶¶ 200–03 (Count XVI); equitable accounting, *id.* ¶¶ 204–07 (Count XVII); unjust enrichment, *id.* ¶¶ 208–10

---

[1] The First Amended Complaint repeats paragraph number 172. *See* Compl. at 26–27. The Court will continue to refer to paragraphs as numbered by Plaintiffs.

(Count XVIII); promissory estoppel/detrimental reliance, *id.* ¶¶ 211–14 (Count XIX); and negligent infliction of emotional distress, *id.* ¶¶ 215–19 (Count XX).[2]

Reliant and Kutcher moved under Federal Rule 12(b)(6) to dismiss the claims against them. Dkt. 76; Dkt. 77 ("Memo."). Plaintiffs opposed the motion. Dkt. 112 ("Opp."). Following oral argument, the Court took the motion under advisement. Dkt. 146.

## II.   Legal Standard

Courts analyzing claims under Federal Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## III.   Discussion

### A.   Contract Claims

Plaintiffs lack standing to pursue contract claims against Reliant based on Reliant's contract with Acclivity. Plaintiffs argue to the contrary that they are intended third-party beneficiaries of that contract. Opp. at 8–9. "In order to prevail under this theory [Plaintiffs] must show that [Reliant] and [Acclivity] intended to give [Plaintiffs] the benefit of the promised

---

[2] The breach of contract and breach of the implied covenant claims (Counts VII and VIII) are pled against Reliant but not against Kutcher. Compl. ¶¶ 147–60.

3

performance." *Anderson v. Fox Hill Vill. Homeowners Corp.*, 424 Mass. 365, 366 (1997).[3] Courts "look at the language and circumstances of the contract for indicia of intention." *Id.* "The intent must be clear and definite." *Id.* at 366–67.

Here, the contract language clearly disclaims any intent to benefit third parties, including Plaintiffs:

> The Report prepared under this Agreement is for [Acclivity's] use only, as the sole Intended User; no other parties are intended or authorized by [Reliant] to use or rely on the Report or any of its content. . . . Assignment results including, but not limited to the Report and opinions of value stated in the Report, shall not be relied upon, in any manner whatsoever, by any party other than [Acclivity]. A party receiving a copy of the Report does not become an intended user of the appraisal. Mere possession, awareness, knowledge, use or similar matters regarding the Report or its content, in any form, format or means of communication, do not create any liability, of any type or sort, on the part of [Reliant.]

Dkt. 78 at 4.[4] Given this unambiguous language, the Court finds that Reliant is, at most, an incidental beneficiary of the contract and therefore lacks standing to sue on it. *Cf. Harvard L. Sch. Coal. for C.R. v. President & Fellows of Harvard Coll.*, 413 Mass. 66, 71 (1992) (holding that students were incidental, rather than intended, beneficiaries of their professors' employment contracts). Accordingly, the Court will grant the motion as to Counts VII (breach of contract) and VIII (breach of the implied covenant).

---

[3] The Court applies Massachusetts law, consistent with Massachusetts conflict of law principles and the parties' analysis. *See* Dkt. 78 at 4 (stating that Reliant and Acclivity agree to have their contract governed by New Jersey law); Memo. at 7 (claiming no difference between New Jersey and Massachusetts law); Opp. at 8–9 (applying Massachusetts law); *Titeflex Corp. v. Liberty Mut. Fire Ins. Co.*, 84 Mass. App. Ct. 1105, 2013 WL 3866609, at *2 n.6 (2013) ("Discerning no conflict between Massachusetts and Pennsylvania law, we apply Massachusetts law.").

[4] Plaintiffs do not dispute the authenticity of the Reliant/Acclivity contract, submitted by the Reliant Defendants. *See* Opp. at 8–9. The Court moreover finds that it is central to Plaintiffs' claim and sufficiently referenced in the allegations, Compl. ¶¶ 154–55, to justify consideration. *Whelden*, 494 F. Supp. at 68.

B.  **Negligence Claims**

Defendants argue that, as a matter of law, they owed no duty of care to Plaintiffs and that, therefore, Plaintiffs' various negligence claims cannot lie. Memo. at 12–13. The Court disagrees. It is true that, "[u]nder Massachusetts law, a party is generally not liable to a third party for its negligence in providing contractual services to another." *In re GlassHouse Techs., Inc.*, 654 B.R. 190, 210 (D. Mass. 2023) (citing *Page v. Frazier*, 388 Mass. 55, 64 (1983)). However, "[a]n exception exists for instances 'where the defendant knew that the plaintiff would rely on his services [to the contracting party],' and it was foreseeable that the defendant's conduct will harm the plaintiff." *Id.* (second alteration in *GlassHouse Techs.*) (quoting *Rae v. Air-Speed, Inc.*, 386 Mass. 187, 193 (1982)). "[A] defendant must have actual knowledge of a plaintiff's reliance in order to state a claim against it." *Id.* at 210–11 (alteration in *GlassHouse Techs.*) (quoting *Nycal Corp. v. KPMG Peat Marwick*, 426 Mass. 491, 495 (1998)).

Here, the appraisal report itself demonstrates the Reliant Defendants' contemporary knowledge of Plaintiffs and of the Lightspeed transaction. Dkt. 78 at 26 (identifying Plaintiff Lori Kinney as "Buyer" and stating that Reliant had "reviewed" Aquidneck's Letter of Intent to purchase Lightspeed).[5] The Court finds this sufficient to reasonably infer that Reliant knew of Plaintiffs' reliance on the appraisal. *Cf. Nycal*, 426 Mass. at 495–99 (finding no liability for accountant misstatements where defendant lacked knowledge of the relevant transaction). Defendants point alternatively to disclaimers in the report, purporting to limit its authorized use and clarifying that Reliant did not independently verify the underlying information. *See, e.g.*, Dkt. 78 at 20 ("Facts & Data provided to the Appraiser have not been audited or verified for

---

[5] Plaintiffs do not dispute the authenticity of the appraisal report, submitted by the Reliant Defendants. *See* Opp. at 1–2. The Court moreover finds that it is central to Plaintiffs' claim and sufficiently referenced in the allegations, Compl. ¶¶ 75–76, 154–55, to justify consideration. *See Whelden*, 494 F. Supp. at 68.

accuracy by the Appraiser."). Whether, given the sum of those statements, Reliant could have reasonably foreseen Plaintiffs' reliance, and whether that reliance was itself reasonable under the circumstances, are questions of fact that the Court cannot resolve in this posture and on the current record. Accordingly, the Court will deny the motion as to Counts IX (negligent misrepresentation), XI (negligence), and XX (negligent infliction of emotional distress).

### C. Promissory Estoppel

For much the same reason, the Court will deny the Reliant Defendants' motion as to Count XIX (promissory estoppel).[6] Under Massachusetts law, promissory estoppel "consists simply of a promise that becomes enforceable because of the promisee's reasonable and detrimental reliance." *Lieberman v. Storagenetworks, Inc.*, 60 Mass. App. Ct. 1118, 2004 WL 360489, at *2 (2004) (quoting *Rooney v. Paul D. Osborne Desk Co., Inc.*, 38 Mass. App. Ct. 82, 83 (1995)). Plaintiffs point to representations in Reliant's appraisal report, specifically that the appraisal constituted "an independent business valuation from a qualified source," consistent with industry standards.[7] Dkt. 78 at 12, 16. As above, whether Plaintiffs' reliance on those statements was reasonable, given Reliant's several disclaimers, is a question of fact.

### D. Breach of Fiduciary Duty Claims

The Court finds Plaintiffs' factual allegations inconsistent with their claim that the Reliant Defendants owed them a fiduciary duty. "The circumstances which may create a fiduciary relationship are so varied and so difficult to foresee that it is unwise for courts to attempt to make comprehensive definitions." *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 408 (2019) (quoting *Cann v. Barry*, 293 Mass. 313, 316 (1936)). Nevertheless, there are guiding principles. A

---

[6] Plaintiffs plead Count XIX as "promissory estoppel/detrimental reliance." Compl. ¶¶ 211–14.

[7] The Court assumes without prejudging that the industry standard allegedly promised would dictate what is reasonable in tort. As such, practically speaking, the claims are likely substantially the same.

fiduciary relationship generally may arise where one party reposes trust and confidence and the other party knowingly accepts that trust. *See FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102 (1st Cir. 2009) (citing *Superior Glass Co. v. First Bristol Cnty. Nat'l Bank*, 380 Mass. 829, 832 (1980)). That being said, "generalized assertions of trust and reliance will not suffice." *Albert v. Zabin*, 2011 WL 1020090, at *3 (Mass. Super. Jan. 11, 2011) (citing *Patsos v. First Albany Corp.*, 433 Mass. 323, 335–36 (2001)), *aff'd*, 81 Mass. App. Ct. 1109 (2012).[8]

The Court finds *Albert* instructive. In that case, a plaintiff sued expert witnesses he had relied upon in presenting a prior lawsuit. *Id.* at *1. As in this case, the plaintiff argued "that his position of reliance on the expert defendants' specialized knowledge and expertise necessarily implicated a sense of trust and confidence, giving rise to a fiduciary relationship." *Id.* at *3; *cf.* Compl. ¶ 155. However, as the *Albert* court explained:

> The problem with this reasoning, is that it would lead to a fiduciary relationship between any service professional and their customers. Anyone paying for the services of a mechanic, an interior decorator, a tailor, a butcher, a baker, or a candlestick-maker, to name just a few examples, is relying on that professional's specialized knowledge and expertise. The definition of a fiduciary duty, however imprecise, does not encompass all these situations.

*Albert*, 2011 WL 1020090, at *3. The court in *Albert* further pointed out that, as is the case here, the expert defendants were subject to duties of independence and impartiality that would necessarily be in tension with any fiduciary-style obligation to act in the best interests of the principal. *Id.* This analysis aligns with rulings from other courts that have highlighted a fiduciary's role in "making decisions for the plaintiff or exercising control over his property." *See, e.g.*,

---

[8] Technically, *Albert* was decided on summary judgment. 2011 WL 1020090, at *3. However, the court intimated that it was essentially revisiting its prior denial of a motion to dismiss, *id.* ("Albert relies primarily on this Court's . . . decision denying the defendants' Motion to Dismiss[.] . . . Notably, the Motion to Dismiss was denied before the revised standard governing motions to dismiss was enunciated in *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 636 (2008) [(adopting the plausibility standard)]."), and accordingly reasoned based on the plaintiff's "assertions," *id.* In any event, the Court finds *Albert*'s analysis useful in the present posture.

7

*Vasquez v. Potter & Co.*, 2007 Mass. App. Div. 26, 2007 WL 959538, at *3 (Dist. Ct. 2007); *see also, e.g.*, *Geo. Knight & Co. v. Watson Wyatt & Co.*, 170 F.3d 210, 216–17 (1st Cir. 1999) ("Although Watson Wyatt's work contributed information necessary for Knight to make its decision whether and how to amend the Plan, there is nothing in the record to suggest that Watson Wyatt controlled Knight's decision."). Plaintiffs allege only that Reliant provided information upon which Plaintiffs relied, not that Reliant in any way supplanted Plaintiffs' decision-making. Accordingly, the Court will grant the Reliant Defendants' motion as to Count X (breach of fiduciary duty).

    E.  **<u>Unjust Enrichment & Money Had and Received</u>**

  The Court finds Plaintiffs' claims for unjust enrichment and money had and received adequately pled against Reliant but not against Kutcher. "Unjust enrichment occurs when a party retains the property of another 'against the fundamental principles of justice or equity and good conscience.'" *Bonina v. Sheppard*, 91 Mass. App. Ct. 622, 625 (2017) (quoting *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005)). "The elements of money had and money received are the same, except the benefit conferred must be money." *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, 140 F. Supp. 3d 138, 141 (D. Mass. 2015). In short, Plaintiffs have alleged that Reliant was paid by Plaintiffs for the appraisal and that, given its allegedly inadequate product, retention of that payment would be unjust. Compl. ¶¶ 42, 76–78. This satisfies the elements.

  As a mere employee, however, Kutcher is "too far removed" from the quasi-contract relationship between Plaintiffs and Reliant for Plaintiffs to recover from him on an unjust enrichment theory. *See Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 390 (D. Mass. 2012); *cf. Focused Impressions, Inc. v. Sourcing Grp., LLC*, 2020 WL 1235366, at *6–7 (D. Mass. Mar. 13, 2020) (premising unjust enrichment claim on corporate officer liability and the direct receipt of funds).

8

Accordingly, as to Counts XVI (money had and received) and XVIII (unjust enrichment), the Court will deny the motion as to Reliant but grant the motion as to Kutcher.

### F. Other Remaining Claims

Finally, the Court finds no basis for Plaintiffs' remaining claims for declaratory judgment (Count XIII), equitable relief (Count XIV), injunctive relief (Count XV), or equitable accounting (XVII). At oral argument, Plaintiffs rightly declined to defend these counts. Plaintiffs' alleged harms redressable against the Reliant Defendants would be satisfied by an award of money damages (or restitution in equity). These causes of action are therefore inappropriate.

## IV. Conclusion

For the foregoing reasons, the Reliant Defendants' motion to dismiss is GRANTED in part and DENIED in part. Against Reliant, Counts VII, VIII, X, XIII, XIV, XV, and XVII are DISMISSED. Against Kutcher, Counts X, XIII, XIV, XV, XVI, XVII, and XVIII are DISMISSED.

**So Ordered.**

                                                  /s/ Brian E. Murphy
                                                  Brian E. Murphy
Dated: July 31, 2025                    Judge, United States District Court