UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| AQUIDNECK TRUCKING, LLC, et al., | ) ) ) |   |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) | 24-12767-BEM |
| LIGHTSPEED TRUCKING, LLC, et al., | ) ) ) |   |
| Defendants. | ) ) |   |

**MEMORANDUM AND ORDER ON DEFENDANT
ANTHONY WONG SHUE I'S MOTION TO DISMISS**

**MURPHY, J.**

Plaintiffs Aquidneck Trucking LLC ("Aquidneck") and Lori Kinney Sullivan claim that the assets they contracted to purchase from Defendant Lightspeed Trucking, LLC ("Lightspeed") turned out to be fictitious. Among others, Plaintiffs have sued Defendant Anthony Wong Shue I ("Wong Shue Sr."), alleging that he was a main player in the fraud. *See generally* Dkt. 66 (First Amended Complaint, or "Compl."). Wong Shue Sr. now moves to dismiss the claims against him. For the reasons stated herein, the Court will dismiss one count but otherwise deny the motion.

**I.    Background**

   **A.    Factual Background**

The Court draws the following facts from the Complaint and accepts them as true for purposes of the instant motion.

Lightspeed is an ostensible trucking company based in Colorado. Compl. ¶ 3. Wong Shue Sr. is a Florida resident and a minority (28%) shareholder in Lightspeed. *Id.* ¶¶ 5, 69. He is also Lightspeed's tax preparer, via his tax preparation company, co-Defendant Skyward Tax &

Accounting Service, LLC ("Skyward"), *id.* ¶ 77, as well as father to Lightspeed principal Defendant Anthony Wong Shue II ("Wong Shue Jr."), *id.* at 2.

Plaintiffs are a trucking company and its principal, both operating out of Massachusetts. *Id.* ¶¶ 1–2, 51–52. In or about November 2023, Plaintiffs responded to an online advertisement for the sale of Lightspeed. *Id.* ¶ 52. Shortly thereafter, Plaintiffs executed a Letter of Intent to purchase Lightspeed's business assets. *Id.* That sale (the "Lightspeed Transaction") closed in March 2024. *Id.* ¶ 24.

Soon thereafter, Plaintiffs claim that they "discovered that Lightspeed, Wong Shue Jr. and Wong Shue Sr." and their associates "had orchestrated and perpetrated a fraud upon the Plaintiffs by knowingly and intentionally proffering false and fabricated profit and loss statements, contracts, truck titles, tax returns and other documents to Aquidneck to sell the assets of Lightspeed which did not exist." *Id.* ¶ 84. Plaintiffs accuse Wong Shue Sr. and Skyward, in particular, of "assist[ing] in the creation of false and inflated Internal Income Statements, Internal Balance Sheets and, ostensibly, in the filing of false and fabricated tax returns and tax documents" in order "to prop-up Lightspeed and Wong Shue[] Jr.'s fraud." *Id.* ¶ 99. Wong Shue Jr. and Wong Shue Sr. are said to have "operat[ed] Lightspeed as a 'ponzi scheme' defrauding investors and truckers into investing into trucking contracts and trucking routes that did not exist and claiming to have used their money to purchase and place 'trucks on the road' that also did not exist." *Id.* ¶ 100. Plaintiffs claim that, relying on these deceptions, they entered into "loan agreements, security agreements, and personal guarantees, which cannot be repaid" and that Plaintiffs have accordingly "suffered damages in excess of $1,150,000." *Id.* ¶ 103.

**B.    Procedural Background**

Plaintiffs filed this lawsuit on November 1, 2024. Dkt. 1. Their First Amended Complaint names 20 defendants, seemingly everyone involved in the transaction, asserting a total of 21 counts

among them. *See generally* Compl. ¶¶ 112–224. Against Wong Shue Sr., Plaintiffs assert claims for fraud, deceit and misrepresentation, *id.* ¶¶ 112–17 (Count I); fraudulent inducement, *id.* ¶¶ 118–25 (Count II); unfair and deceptive business practices under Mass. Gen. Laws c. 93A, § 11, *id.* ¶¶ 126–30 (Count III); civil conspiracy, *id.* ¶¶ 131–34 (Count IV); recission, *id.* ¶¶ 135–40 (Count V); negligent misrepresentation, *id.* ¶¶ 161–64 (Count IX); breach of fiduciary duty, *id.* ¶¶ 165–72 (Count X); mutual mistake, *id.* ¶¶ 178–83 (Count XII); declaratory judgment, *id.* ¶¶ 184–87 (Count XIII); equitable relief, *id.* ¶¶ 188–93 (Count XIV); injunctive relief, *id.* ¶¶ 194–99 (Count XV); money had and received, *id.* ¶¶ 200–03 (Count XVI); equitable accounting, *id.* ¶¶ 204–07 (Count XVII); unjust enrichment, *id.* ¶¶ 208–10 (Count XVIII); promissory estoppel/detrimental reliance, *id.* ¶¶ 211–14 (Count XIX); negligent infliction of emotional distress, *id.* ¶¶ 215–19 (Count XX); and intentional infliction of emotional distress, *id.* ¶¶ 220–24 (Count XXI).

Following service, Wong Shue Sr. failed to respond to the complaint, resulting in a procedural morass. On May 1, 2025, default entered against Wong Shue Sr. Dkts. 101, 105. On May 8, 2025, Plaintiffs moved for default judgment against him. Dkt. 116. On May 28, 2025, Wong Shue Sr. made his first appearance and opposed that motion. Dkts. 119, 121. The Court construed Wong Shue Sr.'s opposition to default judgment as a motion to set aside the default and granted that motion. Dkt. 146. The Court therefore denied the motion for default judgment, as well as a separate motion to strike Wong Shue Sr.'s motion to dismiss, based on his previous, defaulted status. *See* Dkts. 141, 146.[1]

---

[1] Default also entered against Skyward, Wong Shue Sr.'s tax preparation company. Dkts. 94, 96. Surprisingly, Skyward was not included in Wong Shue Sr.'s opposition to default judgment or motion to dismiss. *See* Dkts. 121–22. At oral argument, Wong Shue Sr.'s counsel confirmed that he was not representing Skyward. *See* July 17, 2025 Rough Transcript ("Tr.") at 13:21–14:12. Accordingly, the default against Skyward has not been set aside, and the motion for default judgment against Skyward was granted. Dkts. 146, 148.

With all that settled, before the Court is Wong Shue Sr.'s motion to dismiss. Dkt. 122; *see also* Dkt. 130-1 ("Memo.");[2] Dkt. 138 ("Opp."). Wong Shue Sr. initially moved under Federal Rules of Civil Procedure 12(b)(1)–(6). At oral argument, Wong Shue Sr. conceded that he had been properly served and withdrew those parts of his motion.[3] The Court considers the others in turn below.[4]

## II. Discussion

### A. Standing

Wong Shue Sr. confusingly argues that Plaintiffs lack standing because they "fail[] to allege that [Wong Shue Sr.] personally engaged in any conduct that injured the Plaintiffs" and because Plaintiffs "have not shown that any relief sought from [Wong Shue Sr.] would redress their injuries." Memo. at 3–4. This argument misapprehends both the allegations and the law. Standing requires an "injury in fact," a "causal connection between the injury and the conduct complained of," and a "likel[ihood] . . . that the injury will be redressed by a favorable decision," *i.e.*, redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotes omitted).

Here, Plaintiffs allege that they are out over a million dollars (injury in fact) because Wong Shue Sr. fabricated financial documents in order to sell fake assets (causation). *See* Compl. ¶¶ 84, 99–100. Plaintiffs seek to recoup those funds from Wong Shue Sr., who allegedly personally

---

[2] Wong Shue Sr. initially filed the wrong brief and subsequently moved for leave to amend his filing, which the Court granted. Dkts. 130, 146.

[3] *See* Tr. at 4:22–13:20, 25:3–16, 37:2–38:19.

[4] Wong Shue Sr. also seeks attorney fees for having to respond to what he characterizes as an action that is "wholly insubstantial, frivolous, and advanced in bad faith." Memo. at 19.

4

pocketed a significant portion of the proceeds (redressability). *See id.* ¶¶ 35–37. This plainly satisfies the standing requirements.

### B. Personal Jurisdiction

Wong Shue Sr. also argues that he is not subject to personal jurisdiction in this Court as a Florida resident whose only involvement in the Lightspeed Transaction was as the company's tax preparer. Memo. at 4–10. Again, this argument ignores the allegations and fails accordingly.

#### 1. Legal Standard

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). "That approach asks only whether the plaintiff has proffered facts that, if credited, would support all facts essential to personal jurisdiction." *Motus, LLC v. CarData Consultants, Inc.,* 23 F.4th 115, 121 (1st Cir. 2022) (internal quotes and parentheses omitted). To meet its burden, "the plaintiff may plead sufficient jurisdictional facts in its complaint, may rely on jurisdictional facts documented in supplemental filings (such as affidavits) contained in the record, and/or may point to undisputed facts." *Id.* at 123 (internal quotes and parentheses omitted). At the motion to dismiss stage, the Court must "draw all reasonable inferences from [the alleged jurisdictional facts] in [the non-moving party's] favor." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001).

Where, as here, subject matter jurisdiction is premised on diversity of citizenship, "a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014). "The reach of Massachusetts' long-arm statute . . . is not coextensive with what due process allows under the federal Constitution." *NRO Bos., LLC v. Yellowstone Cap. LLC*, 2020 WL 5774947, at *5 (D. Mass. Sept. 28, 2020) (citing *SCVNGR, Inc. v. Punchh, Inc.*, 478

Mass. 324, 330 n.9 (2017)). Accordingly, "[e]ven where a party presents 'jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites' of the long-arm statute." *Sheldon v. DT Swiss AG*, 2023 WL 6201560, at *4 (D. Mass. Sept. 22, 2023) (quoting *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979)).

### 2. Analysis

Plaintiffs' allegations against Wong Shue Sr. satisfy both the Massachusetts long-arm statute and the Fourteenth Amendment.

#### a. Massachusetts Long-Arm Statute

Plaintiffs invoke subsections (a), (c), and (d) of the Massachusetts long-arm statute, Mass. Gen. Laws c. 223A, § 3. Opp. at 12, 14. The Court finds jurisdiction proper under at least subsection (c), which authorizes courts to hear causes of action arising from "tortious injury [caused] by an act or omission in this commonwealth." Mass. Gen. Laws c. 223A, § 3(c). Massachusetts courts have long held that subsection (c) is satisfied where, as alleged here, a claim arises out of a defendant's intentionally "sen[ding] or caus[ing] to be sent into Massachusetts fraudulent misrepresentations which caused injury to Massachusetts residents." *Commonwealth v. Purdue Pharma, L.P.*, 2019 WL 5617817, at *5 (Mass. Super. Oct. 8, 2019) (collecting cases); *see also* Compl. ¶¶ 84, 99. Plaintiffs have therefore satisfied the long-arm statute.

#### b. Due Process Clause

The exercise of jurisdiction over Wong Shue Sr. also comports with due process. The Fourteenth Amendment requires that a plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotes omitted). Moreover, a defendant must be found to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Id.* (quoting

6

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  Finally, the exercise of jurisdiction must be "reasonable."  *Id.* at 358 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The plaintiff must demonstrate that each of these three requirements is satisfied."  *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008).

The relatedness prong is easily met.  Plaintiffs' claims arise out of Wong Shue Sr.'s allegedly creating and transmitting fraudulent documents into the Commonwealth, causing injury.  *See Lawrence v. Next Ins., Inc.*, 774 F. Supp. 3d 237, 252 (D. Mass. 2025) ("[C]ommunications directed into Massachusetts may be considered contacts in the forum for relatedness purposes."); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1389–90 (1st Cir. 1995) ("The transmission of information into New Hampshire by way of telephone or mail is unquestionably a contact for purposes of our analysis.").

So, too, is the purposeful availment prong, which focuses on whether a defendant has "deliberately target[ed] its behavior toward the society or economy of a particular forum."  *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 36 (1st Cir. 2016) (alteration in original) (quoting *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011)).  "This purposeful availment inquiry 'focus[es] on the defendant's intentionality' and rests on two cornerstones: 'voluntariness' and 'foreseeability.'"  *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 96 (1st Cir. 2024) (alteration in original) (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 60 (1st Cir. 2016)).  Wong Shue Sr. is claimed to have intentionally fabricated financial documents to "prop-up" Lightspeed's sale to a Massachusetts company, executed under a Massachusetts contract.  *See* Compl. ¶¶ 84, 99; Dkt. 66-1 at 12.  Given those allegations, Wong Shue Sr.'s being haled into court in Massachusetts was entirely foreseeable.

Finally, the Court finds that the exercise of jurisdiction is reasonable under the "gestalt factors" set forth by the Supreme Court. *See Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 10 (1st Cir. 2009). "These factors include: the defendant's burden of appearing, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Wong Shue Sr. makes no specific argument regarding any of these factors. *See* Memo. at 9. The Court finds, on balance, that they weigh in favor of exercising jurisdiction. Massachusetts clearly has an interest in this dispute, and Plaintiffs' interests are served by being able to litigate in their home state. Wong Shue Sr. may, as a result, be inconvenienced, but that is true for all out-of-state defendants, and the Court has already invested substantial resources in overseeing this case.

### C. Venue

Wong Shue Sr. also objects to venue, again pointing to the fact that he is a Florida resident and operates therefrom. Memo. at 10. But courts in this Circuit apply a "holistic view of the acts underlying a claim" for venue analyses, rather than "look[] only at the acts of the defendant." *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 n.6 (1st Cir. 2001). It is undisputed that "Plaintiffs allege that substantial events occurred in Massachusetts." Memo. at 10. Venue is therefore proper. *See* 28 U.S.C. § 1391(b)(2).

### D. Failure to State a Claim

The Court now turns to the individual claims, most of which survive.

#### 1. Legal Standard

Courts analyzing claims under Federal Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is

8

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice." *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

### 2. Analysis

#### a. Claims Based on Misrepresentation

Plaintiffs have adequately pled their core claims for fraud (Count I), fraudulent inducement (Count II), civil conspiracy (Count IV), and negligent misrepresentation (Count IX). These flow directly from Plaintiffs' central allegation that Wong Shue Sr. intentionally created false financial documents as part of a larger scheme to trick Plaintiffs into purchasing fake assets. *See* Compl. ¶¶ 35–37, 84, 99, 100. Plaintiffs' claim for promissory estoppel (Count XIX) likewise survives because the alleged documents carried with them an implied promise of accuracy, upon which Plaintiffs could have reasonably relied. *See id.* ¶ 103. The claims for intentional and negligent infliction of emotional distress (Counts XX and XXI) are plausible given the alleged scale and impact of the "ponzi scheme" operation. *See id.* ¶¶ 98–101, 103.

#### b. Chapter 93A

Plaintiffs' claim for unfair or deceptive business practices under Mass. Gen. Laws c. 93A, § 11 ("93A") also survives. Claims under 93A require courts to "determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*, 438 Mass. 459, 473–74 (2003). This "center of gravity" test is a fact-intensive inquiry that varies case-to-case. *Id.* Courts in this District have repeatedly found that, as alleged here, "when a party receives deceptive statements and relies upon those statements within a particular state, . . . the state in which the reliance has occurred can be said to be the 'center of gravity' for purposes of a Chapter 93A claim."

9

*600 lb Gorillas, Inc. v. Fieldbrook Foods Corp.*, 2018 WL 3475495, at *4 (D. Mass. June 19, 2018). Against this backdrop, the Court finds the pleadings sufficient at this stage.

### c. Equitable and Quasi-Contract Claims

Wong Shue Sr. argues that Plaintiffs' contract-adjacent claims for recission, unjust enrichment, and the like must fail because he was not himself a party to the Asset Purchase Agreement. *See* Memo. at 14, 17, 18. This again ignores the Complaint's core theory, plausibly alleged, that Wong Shue Sr. was not merely a third party to the Lightspeed Transaction but rather an integral player in, and beneficiary of, a complex "ponzi scheme" for which Lightspeed was just a false front. *See* Compl. at 1, ¶¶ 37, 84, 99–101, 103. Given those allegations, Wong Shue Sr.'s continued participation in these claims is merited. *Cf. Aquidneck Trucking, LLC v. Lightspeed Trucking, LLC*, 2025 WL 1725856, at *2 (D. Mass. June 20, 2025) (finding dismissal appropriate where other defendant lacked a substantial interest in the contracts). Accordingly, Plaintiffs' claims for recission (Count V), mutual mistake (Count XII), declaratory judgment (Count XIII), equitable relief (Count XIV), injunctive relief (Count XV), money had and received (Count XVI), equitable accounting (Count XVII), and unjust enrichment (Count XVIII) will not be dismissed.

### d. Breach of Fiduciary Duty

The Court does agree, however, that Plaintiffs have failed to state a claim for breach of fiduciary duty. "Fiduciary relationships normally do not arise from 'business transactions conducted at arm's length,' but may where 'one party reposes its confidence in another.'" *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 128 (D. Mass. 2024) (quoting *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995)). Because Plaintiffs have not alleged a typical fiduciary relationship, "the Court considers (1) 'the relation of the parties,' (2) 'the plaintiff's business capacity contrasted with that of the defendant,' (3) 'the readiness of the plaintiff to follow the defendant's guidance in complicated transactions wherein the defendant

has specialized knowledge,' and (4) 'the defendant's knowledge of the plaintiff's reliance.'" *Id.* (quoting *Indus. Gen.*, 44 F.3d at 44).

Here, considering the above factors, the Court finds that Plaintiffs have not pled facts reasonably suggestive of a fiduciary relationship. Plaintiffs characterize Aquidneck's post-closing relationship with Lightspeed as a "partner[ship]" to which Wong Shue Sr. owed a fiduciary duty. Opp. at 8–9. However, even if Wong Shue Sr. owed such a duty to Lightspeed (and, by extension, to its close business partners), Plaintiffs point to nothing in the Asset Purchase Agreement or otherwise demonstrating Aquidneck's purported close relationship with Lightspeed. *Id.* On independent review, the Court does not find support either. *See generally* Dkt. 66-1. Rather, Aquidneck and Lightspeed (and Wong Shue Sr., by alleged extension) appear to have been engaged in an arm's-length transaction for which Plaintiffs were on generally equal footing. Accordingly, the Court will dismiss the claim for breach of fiduciary duty (Count X).

### III. Conclusion

For the reasons stated herein, the motion is GRANTED in part. Count X against Wong Shue Sr. is dismissed. The motion is otherwise DENIED.[5]

**So Ordered.**

Dated: July 31, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

---

[5] Wong Shue Sr.'s request for attorney's fees, Memo. at 19, is of course also denied.