UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AQUIDNECK TRUCKING, LLC,<br>LORI KINNEY SULLIVAN,<br>Plaintiffs,<br><br>v.<br><br>LIGHTSPEED TRUCKING, LLC.,<br>ET AL.,<br>Defendants,<br><br>v.<br><br>UNITED STATES SMALL BUSINESS<br>ADMINISTRATION.<br>Party-in-Interest. | Civil Action No. 1:24-CV-12767-BEM |

**DECLARATION OF LORI KINNEY SULLIVAN IN SUPPORT OF ENTRY OF DEFAULT JUDGMENT AGAINST ANIKA JOHNSON AND CHRISTIAN SUDDIN**

I, Lori Kinney Sullivan, being first duly sworn, hereby affirm and state under the penalties of perjury as follows:

1. I make this Declaration based upon my personal knowledge of the facts and circumstances giving rise to the above-captioned matter, my participation in the transaction at issue, and my review of records and documents obtained in connection with the investigation and litigation of this matter.

2. I submit this Declaration in support of Plaintiffs' Motion for Entry of Default Judgment against Defendant Anika Johnson ("Johnson") and Defendant Christian Suddin ("Suddin").

3. I am the Owner and General Manager of Aquidneck Trucking, LLC ("Aquidneck"), along with Bryan Sullivan ("Bryan").

4. Aquidneck is a small, Purple Heart veteran- and family-owned trucking company located in Chelmsford, Massachusetts.

5. In 2023, Aquidneck was brokered and sold the purported assets of a second trucking company, Lightspeed Trucking, LLC ("Lightspeed"), and was loaned $815,900.00 by Citizens Bank ("Citizens") under SBA Loan Number xxxxxxx8191-06 (the "SBA Loan") to finance the purchase.

6. Specifically, the SBA monies were loaned to Aquidneck "for the purpose of facilitating Borrower's purchase of substantially all assets of Lightspeed Trucking, LLC, a Colorado limited liability company, an existing freight management company." See First Amended Complaint, Exhibit 2 [Document 66-2] at p. 1.

7. However, the principal assets of Lightspeed, including nine purported trucking contracts and a 2015 International ProStar truck, were fraudulent and did not exist as represented.

8. In fact, Anthony Wong Shue, Jr. ("Anthony Jr.") and Anthony Wong Shue, I, a/k/a Anthony Wong Shue, Sr., Anthony Li Wong Shue, I, and Anthony Wong Shue ("Anthony Sr."), were operating Lightspeed as a Ponzi scheme.

9. Anthony Jr. and Anthony Sr. defrauded investors and truckers into investing in trucking contracts and trucking routes that did not exist and claimed that investors' money was being used to purchase and place trucks "on the road" that also did not exist.

10. Anthony Sr. was represented as a twenty-percent owner of Lightspeed, with Anthony Jr. owning the remaining eighty percent.

***Aquidneck's Presumed Purchase of Lightspeed.***

11. On or about March 28, 2024, Aquidneck entered into an Asset Purchase Agreement (the "APA") whereby Aquidneck purported to purchase all of the assets used by Lightspeed in the operation of its trucking logistics business for the purchase price of $1,150,000.00 (the "Purchase Price"). See Exhibit 1 to the First Amended Complaint [Document 66-1].

12. Specifically, Aquidneck purported to purchase nine trucking contracts, the goodwill of the business, a 2015 International ProStar truck (the "Truck") represented to be registered in Nevada, and other miscellaneous assets.

13. The Purchase Price was funded in part by a $107,500.00 cash down payment made by Aquidneck.

14. The Purchase Price was also funded by the SBA Loan, which was secured by a ten-year note and loan agreement bearing number PLP xxxx8191-06 (the "SBA Loan Agreement"). See Exhibit 2 to the First Amended Complaint [Document 66-2] at pp. 18-23.

15. In addition, Aquidneck entered into two promissory notes with Lightspeed in the amounts of $122,500.00 ("Note 1") and $164,500.00 ("Note 2"), under which Lightspeed became a standby creditor subordinate to the SBA Loan Agreement. See Exhibit 1 to the First Amended Complaint [Document 66-1] at pp. 15-22.

16. To secure the SBA Loan Agreement, Aquidneck principal Bryan Sullivan executed a mortgage encumbering two properties located in Middletown, Rhode Island, one of which is his family home.

17. The proceeds from the Purchase Price were distributed to Lightspeed, Anthony Jr., Anthony Sr., and others by the escrow agent, James, Bates, Brennan and Groover, LLP.

18. Lightspeed, Anthony Jr., and Anthony Sr. received $415,493.80 from the proceeds of the sale into bank accounts at Mercury Bank, which monies we subsequently learned were transferred, in part, to J.P. Morgan Chase Bank, N.A. accounts in the name of Anthony Sr.

19. Bank records show that Anthony Sr. received approximately $273,000.00, or 49.28 percent, of the sale proceeds deposited into Lightspeed's bank accounts despite being represented as only a twenty-percent owner.

***Aquidneck Discovers Lightspeed and the Defendants' Fraud.***

20. On or about April 5, 2024, only days after entering into the APA, Anthony Jr. filed a Voluntary Petition for Bankruptcy in the United States Bankruptcy Court for the District of Colorado, Denver Division, Case No. 24-11657-KHT.

21. Thereafter, we discovered that Lightspeed, Skyward Tax & Accounting Service, LLC ("Skyward"), Anthony Jr., Anthony Sr., Lightspeed Operations Manager Russell Tomlin, Johnson, and others had orchestrated and perpetrated a fraud upon us.

22. The fraud included knowingly and intentionally proffering false and fabricated profit-and-loss statements, income statements, balance sheets, contracts, truck titles, tax returns, banking records, payment records, and other documents to induce Aquidneck to purchase assets of Lightspeed that did not exist.

23. The false documents and transactions were used to make Lightspeed appear to be a legitimate, viable, and profitable trucking company when it was not.

***Anika Johnson's Participation in the Fraudulent Scheme.***

24. Based upon the information and records obtained during the investigation of this matter, Johnson assisted Anthony Jr. and Anthony Sr. in operating and maintaining the fraudulent Lightspeed "ponzi" scheme.

25. Johnson maintained assets and bank accounts that were used to facilitate payments to truckers and investors who had been defrauded by the Wong Shue Defendants.

26. The truckers and investors were led to believe that the payments represented returns on their investments or income generated by trucks and trucking routes.

27. In fact, the purported trucks, trucking routes, and trucking investments underlying those payments did not exist as represented.

28. The payments made through the assets and accounts maintained by Johnson were used to create the appearance that Lightspeed was operating a legitimate and profitable trucking business.

29. The payments also helped conceal the fact that the purported investment returns were not being generated through legitimate trucking operations.

30. Based upon the information and records obtained during the investigation of this matter, Johnson maintained one or more of the accounts used in furtherance of the scheme at Navy Federal Credit Union.

31. Johnson's maintenance of those assets and accounts provided material assistance to the Wong Shue Defendants and enabled them to continue making purported returns to earlier investors and truckers.

32. Those payments helped the Wong Shue Defendants perpetuate the scheme, conceal its fraudulent nature, and induce additional persons and entities to rely upon the apparent legitimacy of Lightspeed.

33. Johnson's conduct was part of the common scheme through which Lightspeed was falsely represented to Plaintiffs, the business broker, the valuation company, the lender, and the SBA as a legitimate and profitable going concern.

34. Johnson's participation materially assisted the fraud that ultimately induced Aquidneck to pay $1,150,000.00 for Lightspeed and to enter into the SBA Loan and related financial obligations.

35. Therefore, Johnson is jointly and severally liable along with the other Wong Shue Defendants for: Fraud, Deceit and Misrepresentation; Violation of Mass. Gen. Laws ch. 93A, § 11; Civil Conspiracy; Money Had and Received; Equitable Accounting; Unjust Enrichment; and Promissory Estoppel/Detrimental Reliance.

***Christian Suddin's Participation in the Fraudulent Scheme.***

36. Based upon the information and records obtained during the investigation of this matter, Suddin assisted Anthony Jr. and Anthony Sr. in operating and maintaining the fraudulent Lightspeed "ponzi" scheme.

37. Specifically, Suddin helped finance the Lightspeed "ponzi" scheme by recruiting truckers and helping them obtain financing to invest into Lightspeed, including but not limited to Liana Kaiwi and Always Aloha Trucking, LLC.

38. Suddin also made false payments to Lightspeed to present the appearance of earned income that were not from actual clients, customers, or trucking revenues.

39. Suddin provided material assistance to the Wong Shue Defendants and enabled them to continue making purported returns to earlier investors and truckers.

40. Those payments helped the Wong Shue Defendants perpetuate the scheme, conceal its fraudulent nature, and induce additional persons and entities to rely upon the apparent legitimacy of Lightspeed.

41. Suddin's conduct was part of the common scheme through which Lightspeed was falsely represented to Plaintiffs, the business broker, the valuation company, the lender, and the SBA as a legitimate and profitable going concern.

42. Suddin's participation materially assisted the fraud that ultimately induced Aquidneck to pay $1,150,000.00 for Lightspeed and to enter into the SBA Loan and related financial obligations.

43. Therefore, Suddin is jointly and severally liable along with the other Wong Shue Defendants for: Fraud, Deceit and Misrepresentation; Civil Conspiracy; Money Had and Received; Equitable Accounting; Unjust Enrichment; and Promissory Estoppel/Detrimental Reliance.

***Additional Discovery of the Fraud.***

35. Anthony Sr. owns and operates Skyward along with his wife in Orlando, Florida.

36. Anthony Sr. and Skyward played a critical part in the fraud because the lender, underwriter, and business valuation company relied upon false and fabricated tax returns, profit-and-loss statements, financial statements, and financial projections to establish Lightspeed's purported value, validate the Purchase Price, and obtain approval for the SBA Loan.

37. We met with Anthony Jr. and Lightspeed Operations Manager Russell Tomlin in April 2024 to facilitate the transition of ownership and management.

38. Pursuant to the parties' agreement, Tomlin agreed to continue his employment with Aquidneck following the closing in the same role, performing the same functions, and at the same rate of compensation he had received from Lightspeed.

39. In May 2024, Tomlin suddenly ceased all communications with us and has not been heard from since.

40. Based upon the information obtained during the investigation of this matter, Tomlin participated in the orchestration of the fraudulent Lightspeed Transaction and received monetary compensation in connection with it.

41. After the closing, Anthony Jr. delayed producing the title for the Truck and claimed that the title had been lost in the mail.

42. Approximately four months later, Anthony Jr. sent us a title identifying another owner, Jonah Souza, and a lost-title replacement document for a truck registered in Colorado rather than Nevada.

43. At the time Anthony Jr. and Lightspeed purported to sell the Truck to Aquidneck, the Truck had already been sold to a third party.

44. To date, Anthony Jr. and Lightspeed have failed to deliver or transfer valid title to the Truck to Aquidneck.

45. After the closing, Anthony Jr. failed and refused to turn over critical business documents and failed to provide access to Lightspeed's business email accounts and Slack platform, on which he claimed substantially all of Lightspeed's business operations were processed and documented.

46. Based upon the circumstances, Anthony Jr.'s delays were intended to conceal the extent of the fraud for as long as possible.

47. As part of the Lightspeed Transaction, Anthony Jr. agreed to transfer all contract revenues to Aquidneck, but he never did so.

48. Instead, Anthony Jr. sent us a fabricated wire confirmation and additional fabricated banking documents for trucking-contract revenue that did not exist.

49. To conceal the fraud, Anthony Jr. delayed turning over updated trucking contracts and driver and investor contact information.

50. We eventually located contact information for Lightspeed's purported customers and learned that the nine trucking contracts comprising substantially all of Lightspeed's reported 2023 revenue and expected future revenue were fraudulent and did not exist.

51. In order to support Lightspeed's fraud, Anthony Sr. and Skyward assisted in creating false and inflated internal income statements, internal balance sheets, tax returns, and tax documents.

***Plaintiffs' Damages.***

52. As a result of the joint actions of Johnson and the other participants in the fraudulent scheme, Aquidneck, Bryan, and I entered into the Lightspeed Transaction, loan agreements, security agreements, mortgage, promissory notes, and personal guarantees that cannot be repaid from Lightspeed's purported revenue.

53. We have suffered damages in the amount of **$1,807,160.63** to date, which damages continue to accrue, as follows:

| | |
|---|---|
| Lightspeed Purchase Price: | $1,150,000.00 |
| SBA Loan Interest: | $122,815.88 |
| Loans and Investments to Lightspeed: | $178,894.00 |
| Lost Wages: | $271,000.00 |
| Attorney's Fees and Costs: | $84,450.75 |
| **TOTAL:** | **$1,807,160.63** |

54. We seek recoupment of the entire Purchase Price of $1,150,000.00 for the purchase of Lightspeed a business that did not exist as represented and did not possess the material assets represented to us together with $122,815.88 in interest paid or accrued on the SBA Loan.

55. We also seek to recover $178,894.00 in additional monies that we invested in Lightspeed in an attempt to sustain the business after the closing, which funds were withdrawn from our personal savings and retirement accounts.

56. I have also suffered lost wages in the amount of $271,000.00 because I have not received wages or salary from Aquidneck or Lightspeed since March 2024.

57. Aquidneck and Lightspeed have not had sufficient cash flow to pay me, and I have worked without compensation to obtain legitimate customers, trucking routes, and drivers in an effort to meet the SBA Loan obligations and the operating expenses of Aquidneck and Lightspeed.

58. As of November 2025, we had incurred $84,450.75 in attorney's fees and costs in investigating the fraud and bringing this action.

59. As a result of the Defendants' fraud, Aquidneck, Bryan, and I entered into loan agreements, security agreements, a mortgage, promissory notes, and personal guarantees based upon false premises, mutual mistake, and the intentional fraud perpetrated by the Defendants.

60. We also seek prejudgment and postjudgment interest as provided by law.

61. The damages caused by Johnson and the other participants in the fraudulent scheme are indivisible and arose from their joint and coordinated conduct.

62. Johnson's assistance in maintaining and using assets and bank accounts in furtherance of the scheme and Suddin's assistance in obtaining financing and false payments to Lightspeed were substantial factors in enabling the fraud to continue and in causing Plaintiffs' damages.

63. Accordingly, Johnson and Suddin are jointly and severally liable with the other Wong Shue Defendants for their participants in the fraudulent scheme for the entire amount of Plaintiffs' damages.

64. Plaintiffs acknowledge that they may obtain only one satisfaction of their damages and that any amount recovered from one jointly liable Defendant must be credited against the amounts owed by the other jointly liable Defendants.

65. As a result of the fraud orchestrated by the Defendants, there is no income from Lightspeed with which to repay the SBA Loan in accordance with the expectations of the parties.

66. On or about July 19, 2024, September 10, 2024, and September 30, 2024, we notified Acclivity, Citizens, and the SBA of the fraud surrounding the Lightspeed Transaction.

67. On November 1, 2024, Plaintiffs filed the Complaint initiating this action.

68. On January 31, 2025, Plaintiffs filed the First Amended Complaint. See [Documents 1 and 66].

69. Johnson and Suddin were timely and properly served with process, including the First Amended Complaint. See [Documents 34, 66 and 209].

70. Johnson and Suddin have failed to answer, appear, or otherwise defend against the claims asserted against her.

71. On July 20, 2026, this Court entered a Notice of Default against Johnson and Suddin for failure to plead or otherwise defend this action. See [Documents 214 and 216].

72. Johnson and Suddin are not infants, incompetent persons, or persons in the military service of the United States or any of its allies.

Signed under the pains and penalties of perjury this 19th day of August 2026.

*/s/Lori Kinney Sullivan*
Lori Kinney Sullivan, Owner and General Manager
Aquidneck Trucking, LLC